UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BOOKLOCKER.COM, INC. | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | COMPLAINT AND |
| AMAZON.COM, INC. | : | JURY DEMAND |
| | : | |
| Defendant | : | |
| | : | |

1.     Plaintiff BookLocker.com, Inc. ("BookLocker" or "Plaintiff"), on its own behalf and on behalf of the class defined herein, brings this antitrust action to obtain injunctive and monetary relief against Amazon.com, Inc. ("Amazon") with regard to an anticompetitive tying arrangement that violates section 1 of the Sherman Act, 15 U.S.C. § 1.

2.     Plaintiff's allegations as set forth below are based upon the personal knowledge of Plaintiff's principals, except for such allegations stated as being "on information and belief," which allegations are based upon an investigation by Plaintiff and Plaintiff's counsel, including extensive correspondence sent by various publisher informants to Plaintiff and Plaintiff's counsel and interviews with officers of publishing and printing companies conducted by Plaintiff and Plaintiff's counsel.

## **INTRODUCTION**

3.     Plaintiff is an independent print on demand ("POD") publishing company. "Print on demand" refers to both a printing technology and business process in which copies of a book are only printed when an order has been received from a consumer or retail bookseller, and only the number of books that have been ordered are printed.  "Print on

demand" technology allows for very small print runs for lower-demand titles for which traditional printing technology, such as offset printing, is uneconomical.

4.     Upon information and belief, there are thousands of POD publishers presently operating in the United States, who in the aggregate publish hundreds of thousands of titles.

5.     Plaintiff and other POD publishers use a variety of printing companies to print physical copies of the books in their catalogs as those books are ordered.  Presently, Lightning Source, Inc. ("Lightning Source"), a subsidiary of Ingram Industries, Inc., is the leading printer of POD books.

6.     POD books are predominantly sold through online bookstores.  Amazon is widely recognized as being the largest Internet retailer in the world and markets itself in its press releases as having "Earth's Biggest Selection."  Amazon owns and operates the Amazon bookstore, an Internet site that sells books to consumers (the "Bookstore").  Through the Bookstore, Amazon has market power in the online bookselling market.

7.     In 2005, Amazon entered a new market by purchasing a POD printing company called On Demand Publishing LLC, d/b/a BookSurge ("BookSurge").  BookSurge is a competitor of Lightning Source and other printing companies that print POD books.

8.     Upon information and belief, no later than February 10, 2008, Amazon began notifying POD publishing companies that Amazon and the Bookstore would only directly sell to consumers POD Books that were printed by BookSurge.

9.     Amazon's practice of requiring POD publishers to use BookSurge's printing services in order for Amazon to sell those books through the Bookstore constitutes an illegal tying arrangement that has caused, and will continue to cause, damage to Plaintiff and the Class.

## PARTIES

10.     Plaintiff BookLocker.com, Inc. ("BookLocker") is a POD publisher headquartered in Bangor, Maine with approximately 1200 books currently available.

11.     Defendant Amazon.com, Inc. ("Amazon") is the world's largest online retailer and transacts business throughout the United States.

## JURISDICTION AND VENUE

12.     This case arises under the Federal antitrust laws.  Jurisdiction is conferred upon this judicial district pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

13.     Venue is proper in this district pursuant to 15 U.S.C. §§ 15, 22, and 26, and 28 U.S.C. § 1391 because Defendant transacts business in this district and Plaintiff (and likely other class members) operates and has been harmed in this district.  Additionally, a substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and is carried on in part within this district.  The acts complained of have had, and will have, substantial anti-competitive effects in this district.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action pursuant to Rule 23(a) and Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of itself and all POD publishers and publishing companies in the United States who either had books listed for sale in the Bookstore, or who had or have an application to have books listed for sale in the Bookstore, at any time from February 10, 2008 through the conclusion of trial of this matter (the "Class" and "Class Period").

15.     The Class is so numerous that joinder of all members is impractical.  There are thousands of members in the Class who are geographically dispersed throughout the United States.

16.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all Class members have been or will be damaged by the same wrongful conduct of the Defendant alleged herein.

17.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members.  Such common questions include:

    a.     The definition of the relevant market;

    b.     Amazon's market power within that market;

    c.     Whether Amazon's conduct constitutes an illegal tying arrangement under the Sherman Act;

    d.     Whether the contractual conditions Amazon and BookSurge impose upon Plaintiff and Members of the Class are unfair and improper;

    e.     Whether Amazon's conduct has or will cause damage to Plaintiff and members of the Class; and

    f.     The appropriateness of injunctive relief to restrain ongoing and future violations of the law.

18.     The claims of the Plaintiff are typical of the claims of the Class, and Plaintiff has no interest adverse to the interest of other members of the Class.

19.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in the prosecution of complex class actions.

20.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many Class members who could not afford on their own to individually litigate an antitrust claim against a large corporate defendant.  There are no difficulties likely to be encountered in the management of this class action that would preclude it maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of the controversy.

### AMAZON'S IMPROPER CONDUCT

#### *MARKET DEFINITION*

21.     The "Online Book Market" is defined as the market for physical books ordered online by consumers and then delivered to consumers by means of a shipping service.

22.     POD publishers like Plaintiff and members of the Class use the Online Book Market to sell the vast majority of their books, because traditional brick-and-mortar bookstores (like Borders or Barnes & Noble) generally do not stock books from POD publishers.

23.     Amazon's Bookstore is the dominant channel through which consumers purchase POD books in the Online Book Market.  On information and belief, Amazon has significant market power in the Online Book Market, with a market share of up to 70%.

#### *BOOK SALES ON AMAZON*

24.     Consumers generally purchase POD books from the Bookstore in one of two ways.  First, consumers may purchase POD books directly from Amazon itself, through a

prominent button labeled "Add to Shopping Cart" (the "Direct Amazon Sales Channel").  The vast majority of POD books sold in the Bookstore are sold through the Direct Amazon Sales Channel.  Consumers prefer the Direct Amazon Sales Channel for several reasons, including the privacy and security of purchasing direct from Amazon and various free shipping deals that Amazon offers for products purchased directly from Amazon.  As Amazon admits on its BookSurge website, the availability of a POD book in the Direct Amazon Sales Channel is "a distinction proven to lift sales."

25.     Alternately, Amazon allows third-party vendors to sell books on Amazon through a program known as "Amazon Marketplace."  To purchase a book in the Amazon Marketplace, a consumer must provide shipping information to the third-party vendor and cannot take advantage of Amazon's free shipping programs.  Only a small fraction of POD book Bookstore sales are effectuated through the Amazon Marketplace.

### POD BOOK PRINTING SERVICES

26.     In April 2005, Amazon acquired BookSurge, a company that, among other services, provides printing services to POD publishers.

27.     Several printing companies compete to provide book printing services to POD publishers.  At present, Lighting Source is the dominant POD printing service.  For example, according to its website, Lightning Source prints over 1 million books every month on behalf of over 4,300 publishers.  Plaintiff presently prints its books through Lightning Source.

28.     BookSurge is a competitor of Lightning Source (and other printing companies).

### AMAZON'S ILLEGAL TYING SCHEME

29.     On information and belief, beginning no later than February 10, 2008, Amazon began notifying POD publishers that Amazon would only continue to sell POD books through

the Direct Amazon Sales Channel if the publisher agreed to print its books through BookSurge rather than a competing service.

30.     For example, on March 26, 2008, Amazon representative John Clifford notified Plaintiff that Amazon would only continue to sell BookLocker's POD books through the Direct Amazon Sales Channel if Plaintiff agreed to print its books through BookSurge rather than Lightning Source.  The Amazon representative further stated that books printed by Lightning Source or any other competing printer would have their "Add to Shopping Cart" buttons removed.   (Amazon has also informed POD publishers that they may keep the Direct Amazon Sales Channel active if they agree to enroll in a program known as "Amazon Advantage."  However, the terms and conditions of participating in that program are so onerous so as to preclude it from being an economically viable option for POD book publishers.)

31.     Amazon has continued through the present date to threaten POD publishers that unless they convert their inventory to BookSurge printing, their Direct Amazon Sales Channel will be discontinued.

32.     Plaintiff and other Class Members have already lost business and been injured by Amazon's anti-competitive conduct.

33.     Plaintiff and other Class Members will continue to suffer injury unless the relief prayed for herein is granted.  Amazon's improper conduct has presented Plaintiff and members of the Class with an untenable choice: either continue to lose business due to the improper restriction of the Direct Amazon Sales Channel or be forced into signing with BookSurge.

## COUNT I

**(Tying Claim For Violation of Section 1 of the
Sherman Antitrust Act, 15 U.S.C. § 1)**

34.     Plaintiff re-alleges and incorporates by reference each of the allegations set
forth in paragraphs 1 through 33, above.

35.     Amazon's sale of books in the Online Book Market is a separate service from
the printing of POD books by BookSurge.

36.     Amazon has market power for the sale of books in the Online Book Market.

37.     The amount of interstate commerce affected in the market for the printing of
POD books is substantial.

38.     Amazon forces POD publishers to use BookSurge for printing services when
they might otherwise prefer to purchase such printing services elsewhere.

39.     Amazon's practice of tying printing services to sales in the Online Book
Market unreasonably restrains trade and is unlawful per se under Section 1 of the Sherman
Act.

40.     Through the unlawful acts and practices described above Amazon has harmed
competition for and consumers of printing services.

WHEREFORE, Plaintiff BookLocker, on its own behalf and on behalf of the putative
class, prays that the Court declare, adjudge and decree the following:

A.     that this action may be maintained as a class action pursuant to Rule 23(b)(2)
of the Federal Rules of Civil Procedure with respect to Plaintiff's claims for injunctive relief,
and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for

damages and other monetary relief, and declaring Plaintiff as representative of the Class and its counsel as counsel for the Class;

      B.      that the conduct alleged herein constitutes unlawful tying in violation of Section 1 of the Sherman Antitrust Act;

      C.      that Plaintiff and the Class are entitled to injunctive relief under the Clayton Act, 15 U.S.C. § 26, and other applicable law, enjoining Amazon from continuing or engaging in the unfair and anti-competitive activities alleged herein;

      D.      that Plaintiff and the Class are entitled to damages, penalties and other monetary relief provided by the Clayton Act, 15 U.S.C. § 15, and other applicable law, including treble damages;

      E.      that Plaintiff and the Class recover their costs of suit, including reasonable attorneys' fees and pre- and post- judgment interest;

      F.      that Plaintiff and the Class are entitled to an order requiring full restitution of all funds acquired from Amazon's unfair business practices, including disgorgement of revenues and/or profits;

      G.      that Plaintiff and the Class are granted such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable and proper by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 19th day of May, 2008, in Bangor, Maine.


      / s / Anthony D. Pellegrini      
Anthony D. Pellegrini, Esq.
RUDMAN & WINCHELL
84 Harlow Street – P.O. Box 1401
Bangor, Maine 04402
Telephone: 297-947-4501
Facsimile: 207-941-9715
apellegrini@rudman-winchell.com

Liaison Counsel for Plaintiff


Seth R. Klein, Esq.
Robert A. Izard, Esq.
SCHATZ NOBEL IZARD P.C.
20 Church Street, Suite 1700
Hartford, Connecticut 06103
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
sklein@snilaw.com

Lead Counsel for Plaintiff


**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2008, I electronically filed Plaintiff's Complaint and

Jury Demand with the Clerk of the Court at newcases.bangor@med.uscourts.gov.


      / s / Anthony D. Pellegrini